**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

JONATHAN ANDREW GORDON,

                    **Plaintiff,**

v.                                                                **Civil Action No. 3:12cv34**
                                                                 **(Judge Groh)**

TYGART VALLEY REGIONAL JAIL,
LISA WAMSLEY,

                    **Defendants.**

## REPORT AND RECOMMENDATION

## I.  Procedural History

On April 25, 2012, the *pro se* plaintiff filed a civil rights complaint against the above-named defendants, together with the $350.00 filing fee.  On that same date, the Clerk of Court sent the plaintiff a Notice of Deficient Pleading and enclosed a form State Civil Rights Complaint Pursuant to 42 U.S.C. § 1983.  The plaintiff filed a response to the Notice on May 9, 2012, in which he indicated that he was seeking relief under 42 U.S.C. § 1981 and not 42 U.S.C. § 1983.[1]  In addition, he attached a typed complaint. On May 18, 2012, an Order was entered vacating the Notice of Deficient Pleading and providing the plaintiff with notice of the requirements of Rule 4(m) of the Federal Rule of Civil Procedure. Together with the order, the plaintiff was provided twenty-one (21) days summonses for the two named defendants. On June 8, 2012, the order and summonses where returned as unclaimed.  On July 16, 2012, the plaintiff called the clerk's office at the Martinsburg point of holding court and explained why the documents were unclaimed.  That same day, the plaintiff came to the Wheeling point of holding court and was provided copies of the order and

---

[1]Despite this assertion, the plaintiff's original handwritten complaint and the typed complaint attached to his response both clearly indicate that this is "a civil action arising under the Federal statutes of 42 USC 1981 and 42 USC 1983. (Docs. 6-1, p.1 and 1, p.2).

summonses. On August 7, 2012, Tygart Valley Regional Jail ["TVRJ"] filed a Motion to Dismiss. A Roseboro Notice was issued on August 8, 2012. On August 17, 2012, a Motion to Dismiss was filed by Linda Wamsley. A second Roseboro Notice was issued on August 23, 2012. On August 28, 2012, the plaintiff filed a response to the Motion to Dismiss by TVRJ and filed a Motion for Default Judgment against TVRJ. However, the response and motion are identical. On August 29, 2012, the plaintiff returned the executed summons for both the TVRJ and Lisa Wamsley, indicating that both had been served on July 16, 2012. On September 18, 2012, the plaintiff filed response to the "untimely" Motion to Dismiss by Lisa Wamsley and filed a Motion for Default Judgment against Lisa Wamsley. Again, both the response and the motion are identical. On November 26, 2012, the plaintiff filed a Motion for Sanctions and Judicial Notice. On December 10, 2012, Lisa Wamsley and the TVRJ filed separate responses to the Motion for sanctions filed against each of them.

## II.   Contentions of the Parties

**A.   The Complaint** (Docs. 1, 6-1)

In the complaint, the plaintiff asserts that he has a history of mental illness and was voluntarily committed to Mt. Vernon Hospital in Virginia in October of 2006, and to an unnamed facility in Denver, Colorado in April of 2010. The plaintiff further alleges that the Social Security Administration determined that he was disabled on October 23, 2010, and therefore, he is a member of a protected class. The plaintiff further alleges that he was taken into custody in the early morning hours of October 24, 2010, while suffering from a psychotic episode. The essence of the plaintiff's complaint is that medical staff at the TVRJ was made aware of his medical condition via a phone call from his father, and further, that his father had contact with the Administrator at the TVRJ, a nurse at the facility, and Lisa Wamsley, who the plaintiff maintains is a staff psychologist

at the TVRJ. Despite his father's efforts to get him help at the TVRJ or admitted to Sharpe Hospital, the plaintiff maintains that he remained in the TVRJ until October 29, 2010, when he was admitted to Sharpe Hospital, where he remained until December 7, 2010. As claims for relief, the plaintiff alleges:

1. He was a victim of assault and battery at the TVRJ. More specifically, the plaintiff alleges that he was physically unharmed when he arrived at the TVRJ, but was covered in bruises and abrasions as the result of cell extractions during the five-day period of his incarceration.

2. He is a member of a protected class under the American with Disabilities Act and was denied his most basic human rights as established by 42 USC 1981(c) "under the color of state law." The defendants' intentional discrimination against him as a member of a protected class resulted in his being intimidated, physically abused, and humiliated.

3. He seeks justice through 42 U.S.C. § 1983 in the form of a class action for prisoners suffering from mental illness, and the members of this class are subjectively known by agents of the defendants. The plaintiff further alleges that the agents of the TVRJ are showing deliberate indifference to these prisoners' medical conditions.

4. Defendant Wamsley, breached her duty of care to the plaintiff, and therefore, committed medical malpractice.

5. He is entitled to punitive damages against defendant Wamsley because she knew that if his medical condition was to continue, he might never recover, and in response to his father's assertion that he might end up catatonic, she simply responded: "So be it."

6. He is entitled to retaliatory damages as a member of a protected class according to the American with Disabilities Act because he was subjected to neglect, abuse, intimidation and

humiliation.

For relief, the plaintiff seeks compensatory and punitive damages by a jury according to the Medical Malpractice Laws of the State of West Virginia and the laws of the United States. In addition, the plaintiff seeks "any and all other relief to which the Court deems the Plaintiff and members of Plaintiff's class action under 42 USC 1983 are entitled.

**B.   Motion to Dismiss by TVRJ** (Doc. 11)

In their memorandum in support of their motion to dismiss, the TVRJ argues that the plaintiff's complaint against it should be dismissed for several reasons. More specifically, the TVRJ asserts:

(1) The plaintiff's assault and battery claim does not meet the pleading standards delineated by Rule 8 of the Federal Rules of Civil Procedure.

(2) The TVRJ is not a "person" within the meaning of § 1983, and § 1983 is the exclusive federal remedy for violations of the rights guaranteed in § 1981.

(3) The plaintiff's class action claim fails to state a claim upon which relief can be granted, and, in addition, the plaintiff lacks standing.

(4) TVRJ cannot be held liable regarding any claim asserted against Lisa Wamsley.

**C.   The Plaintiff's Response and Motion for Default Judgment** (Docs. 21 & 22)

In his response to the motion to dismiss filed by the TVRJ, the plaintiff alleges that said motion was filed a day after the  allotted 21 days. Therefore, the plaintiff objects to the untimely filing and demands judgment "be set aside in Plaintiff's favour (sic) and a hearing held for damages. Despite his claim that the TVRJ filed an untimely motion to dismiss, the plaintiff does attempt to respond to each of the reasons raised by the TVRJ in support of its motion to dismiss. In summary,

he argues that: (1) a § 1983 claim can be asserted against a jail; (2) § 1981 does provide a separate cause of action; (3) he did not intend to limit his class action to detainees; (4) by hiring Primecare Medical, Inc., and its employee, Lisa Wamsley, the responsibility to care for detainees and inmates rests ultimately with TVRJ; (5) he raised the issues arising under the American with Disabilities Act ("ADA") to which the TVRJ did not respond, and he therefore seeks default judgment for those issues.

**D. Reply by TVRJ** (Doc. 28)

In reply, the defendants argues that there is no precedent for an Entry of Default in this case. In addition, it reiterates that (1) a § 1983 action cannot be maintained against a jail, and the case law cited by the plaintiff does not support a different conclusion; (2) § 1981 does not provide for a separate cause of action, and the plaintiff ignores 4th Circuit law that supports this conclusion; (3) the complaint clearly indicates that the class, which the plaintiff is attempting to bring within his class action, consists of inmates in the TVRJ; (4) the plaintiff's claims for medical malpractice is clearly not viable against the TVRJ; and (5) a review of the plaintiff's complaint reveals that he has failed to state any claim under the ADA, and therefore, no relief is available to him.

**E. Motion to Dismiss by Lisa Wamsley** (Doc. 16)

In support of her motion to dismiss, Ms. Wamsley asserts that the plaintiff failed to comply with the procedural requirements for service of process set forth in Rule 4 of the Federal Rules of Civil Procedure. In addition, Ms. Wamsley asserts that the plaintiff failed to comply with the prerequisites for filing an action against a health care provider set forth in W.Va. Code § 55-7B-6. Finally, Ms. Wamsley asserts that the plaintiff has no claim under 42 U.S.C. § 1981 because the section does not apply to discrimination based on disability. Therefore, Ms. Wamsley argues that

the plaintiff has failed to state a claim upon which relief can be granted, and this Court lacks personal jurisdiction.

**F. <u>The Plaintiff's Response and Motion for Default Judgment</u>** (Doc. 27)

In response to the motion to dismiss, the plaintiff argues that (1) Ms. Wamsley provides treatment for those confined at the TVRJ; (2) a copy of the complaint was sent by certified mail to Ms. Wamsley on April 28, 2012, and was accepted upon her behalf by an agent of the TVRJ, namely, the acting Administrative Sergeant. The plaintiff then argues that Ms. Wamsley meets the West Virginia statutory definition of a health care provider, and by providing health care to those confined at the TVRJ and authorized its agents to accept service on her behalf. Accordingly, the plaintiff moves for default judgment against Ms. Wamsley.

**G. <u>Response by Ms. Wamsley</u>** (Doc. 29)

In response to the plaintiff's Motion for Default Judgment, Ms. Wamsley contends that the plaintiff is not entitled to an Order of Default because he did not comply with the statutory requirements for service of process. Ms. Wamsley then again sets forth the requirements of Rule 4(e) of the Federal Rules of Civil Procedure and Rule 4(d)(1) of the West Virginia Rules of Civil Procedure. In addition Ms. Wamsley avers that she has not authorized any person to accept service on her behalf. Finally, Ms. Wamsley argues that the plaintiff's reliance on W.Va. Code § 55-7B-1, and its definitions of "health care," "health care facility," and "health care provider" does not support the plaintiff's contention that she implicitly authorized employees of the TVRJ to accept service on her behalf.

**H. <u>Plaintiff's Motion for Sanctions and Judicial Notice</u>** (Doc. 31)

On November 26, 2012, the plaintiff filed a document styled "Judicial Notice." In this

document, the plaintiff asserts that he sent his complaint by certified mail prior to the summons being issued to the attention of Lisa Wamsley, via the TVRJ address. He has attached the return receipt showing that said mailing was accepted on April 28, 2012 by the same individual who accepted mail on behalf of Scott Villers on that same date. The plaintiff then notes that in her affidavit at #5, she states: "I have not received a copy of Jonathan Andrew Gordon's Complaint by certified mail." [2] The plaintiff than cites Rule 201(c)(2) of the Federal Rules of Evidence and requests the court to take judicial notice that: (1) an agent of TVRJ has signed for and accepted certified mail upon Ms. Wamsley's behalf and (2) Ms. Wamsley has perjured herself in #5 of her affidavit, or the agent of the TVRJ is in possession of the envelope sent by certified mail which contains the complaint. In addition, the plaintiff asks the court to take judicial notice of the following three "bullets:"

1.    Defendant Lisa Wamsley is not listed as ever having been a licensed
      psychologist according to the West Virginia Board of Examiners of
      Psychologists.

2.    Defendant Lisa Wamsley was engaged in the unauthorized practice
      of medicine at the time of the incident; furthermore, she is not protected
      by WV Code 55-7B-6(b) since she is not a licensed medical professional.

3.    Defendant Tygart Valley Regional Jail through its counsel Thomas Buck
      admits that Plaintiff was suffering from a psychotic episode, and that
      the restraint chair was the medical treatment offered by Tygart Valley
      Jail.

(Doc. 31 p. 7). The plaintiff then argues that discrimination against mentally ill and disabled Americans permeates our society and "opposing counsel has shown it still lingers within our profession." The plaintiff contends that to suggest that placing him in a restraint chair twelve times

---

[2]Ms. Wamsley's Affdavit is Doc. 30-1.

over a four day span is proper medical treatment for a psychotic episode is such an egregious statement contrary to the concept of human decency that sanctions are warranted. Accordingly, the plaintiff seeks sanctions against Thomas E. Buck and his associate Bruce M. Clark.[3]

## III.    Standard of Review

### A.    Motion to Dismiss

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir.1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. Mylan Labs, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir.1993); see also Martin, 980 F.2d at 952.

The Federal Rules of Civil Procedure "require only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.' " Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Courts long have cited the "rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [a] claim which would entitle him to relief." Conley, 355 U.S. at 45-46. In Twombly, the United States Supreme Court noted that a complaint need not assert "detailed factual allegations," but must contain more than labels and conclusions"

---

[3]Thomas E. Buck and Bruce Michael Clark are counsel of record for the TVRJ.

or "a formulaic recitation of the elements of a cause of action." <u>Conley</u>, 550 U.S. at 555 (citations omitted). Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," <u>id</u>. (citations omitted), to one that is "plausible on its face," <u>id</u>. at 570, rather than merely "conceivable." <u>Id</u>. Therefore, in order for a complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." <u>Bass v. E.I.DuPont de Nemours & Co.</u>, 324 F.3d 761, 765 (4th Cir.2003) (citing <u>Dickson v. Microsoft Corp.</u>, 309 F.3d 193, 213 (4th Cir.2002); <u>Iodice v. United States</u>, 289 F.3d 279, 281 (4th Cir.2002)). In so doing, the complaint must meet a "plausibility" standard, instituted by the Supreme Court in <u>Ashcroft v. Iqbal</u>, where it held that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Ashcroft v. Iqbal</u>, 129 S.Ct. 1937, 1949 (2009). Thus, a well-pleaded complaint must offer more than "a sheer possibility that a defendant has acted unlawfully" in order to meet the plausibility standard and survive dismissal for failure to state a claim. <u>Id</u>.

## IV. <u>Analysis</u>

### A. <u>Assault and Battery</u>

The plaintiff alleges that the TVRJ was a direct and proximate cause of the assault and battery during cell extractions. "Federal Rule of Civil Procedure 8(a)(2) provides that a viable complaint must contain a short and plain statement of the claim showing that the pleader is entitled to relief. This requirement is by no means onerous; instead, it is designed to ensure that the complaint will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests. The liberal notice pleading of Rule 8(a) is the starting point of a simplified pleading system, which was adopted to focus litigation on the merits of a claim. Under this pleading system,

a plaintiff must only set forth facts sufficient to allege each element of his claim." Slade v. Hampton Roads Regional Jail 407 F.3d 243, 252 (4th Cir. 2005)(internal citations omitted).

However, in this case, the plaintiff has merely provided "naked assertions devoid of further factual enhancement," the precise type of claim that the Supreme Court has held to be insufficient. Ashcroft v. Iqbal, supra. Clearly, as a state agency and not a person, the TVRJ cannot assault or batter someone. The plaintiff has provided no information regarding the person or persons who allegedly committed the assault and/or battery. Furthermore, the plaintiff has provided no information as to when the alleged assault and/or battery occurred, other than to imply that it occurred at some time after he arrived at the TVRJ on October 24, 2010. Therefore, this claim does not meet the pleading requirements routinely enforced by courts:

> the complaint must give each defendant "fair notice of what [plaintiff's] claim is and the grounds upon which it is based. This includes some factual basis for each claim asserted and the specific legal theory supporting the claim. 'Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'.

Kizzee v. Walmart, 2010 U.S. Dist. LEXIS 43877 (Dist. AZ, 2010) Citing, Holgate v. Baldwin 425 F.3d 671, 676 (8th Cir. 2005). According, this claim is due to be dismissed.

## B. 42 U.S.C. § 1981

As has been previously noted, the plaintiff identifies his complaint as a "civil action arising under the Federal statutes of 42 U.S.C. § 1981 and 42 U.S.C. § 1983." (Docs 1, p. 2 and 6-1, p. 1). § 1981 was originally adopted by Congress immediately after the Civil War on April 9, 1866. It was enacted by virtue of the Thirteenth Amendment and was intended to rectify some of the disabilities of slavery. See Ex parte Virginia, 100 U.S. 339 (1879); United States v. Harris, 106 U.S. 629 (1883); Slaughter-House Cases, 83 U.S. 36 (1872)(Act enacted to guarantee certain privileges and

immunities to eliminate vestiges of involuntary servitude). "The Civil Rights Act of 1866 was the first federal statute to provide broad protection in the field of civil rights. Its purpose was to give the newly emancipated Negro equality with whites before the law." Bernard Schwartz, <u>Statutory History of the United States: Civil Rights Vol. 1</u>, p. 99 (1970).

The original version of the 1866 Act protected both contractual and property rights from discrimination. However, this version was subsequently recodified into two statutes, the current versions of which are 42 U.S.C. §§ 1981-1982. Today, § 1981 applies to contractual rights, while § 1982 applies to property rights. <u>See</u> "National Origin Discrimination Under Section 1981," <u>Fordham Law Review</u>, Vol 51, Issue 5 at 919.

In its most current form, § 1981 provides as follows:

(a) Statement of equal rights

All persons within the jurisdiction of the United States shall
have the same right in every state to make and enforce contracts,
to sue, be parties, give evidence, and to the full and equal benefit
of all laws and proceedings for the security of persons and property
as is enjoyed by white citizens, and shall be subject to like punishment,
pains, penalties, taxes, licenses, and exactions of every kind, and to
no other.

(b) "Make and enforce contracts" defined

For purposes of this section, the term "make and enforce contracts"
includes the making, performance, modification, and termination of
contracts, and the enjoyment of all benefits, privileges, terms, and
conditions of the contractual relationship.

(c) Protection against impairment

The rights protected by this section are protected against impairment
by nongovernmental discrimination and impairment under color of
State law.

42 U.S.C. § 1981.

It is clear from the statute, that it proscribes discrimination based on race. Furthermore, the United States Supreme Court has construed section 1981 to apply to race discrimination directed at groups other than blacks; the statute has been interpreted to protect whites, as well. <u>See</u> <u>McDonald v. Santa Fe Trail Transp. Co.</u>, 427 U.S. 273 (1976)(holding that § 1981 applies to "racial discrimination against white persons"); <u>Johnson v. Railway Express Agency</u>, 421 U.S. 454, 459-460 (1976)("§ 1981 affords a federal remedy against discrimination in private employment on the basis of race"); <u>Georgia v. Rachel</u>, 384 U.S, 780, 791 (1986)(emphasizing "the racial character of the rights being protected").

In the instant case, to the extent the plaintiff alleges that the defendants discriminated against him, he alleges that said discrimination is based on his mental illness. Clearly, he makes no claim of racial discrimination, and therefore, § 1981 has no application. Accordingly, the plaintiff's claims under § 1981 may be dismissed without addressing the argument advanced by the TVRJ that "when a suit is brought against a state actor, § 1983 is the exclusive federal remedy for violation of the rights guaranteed in § 1981.

## C. <u>42 U.S.C. § 1983</u>

42 U.S.C. §1983 provides as follows:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

Therefore, in order to state a claim under 42 U.S.C. § 1983, the plaintiff must demonstrate that a person acting under color of state law deprived him of the rights guaranteed by the Constitution or federal laws. Rendall-Baker v. Kohn, 547 U.S. 830, 838 (1982). Here, the plaintiff cannot establish that the TVRJ is a "person" for purposes of § 1983. In Roach v. Burch, 825 F.Supp. 116 (N.D.W.Va. 1993), this Court directly addressed whether the West Virginia Regional Jail Authority and Correctional Facility ("Authority") was a "person" subject to suit under § 1983. After applying generally accepted factors[4] used to determine whether a State agency is "an arm" or "alter ego" of the State and, therefore, the same as the State for purposes of sovereign immunity, this Court concluded that "as the State, the Authority is not a 'person' suable under § 1983." Roach, supra at 118. See also, Will v. Michigan Department of State Police, 491 U.S. 58 (1989)(finding that a State is not a "person" for purposes of § 1983); Woods v. Western Regional Jail, 2011 WL 805793 *S.D.W.Va (Feb. 4, 2011)(finding that the jail is not a person for purposes of § 1983); Cantley v. Western Regional Jail and Correctional Facility Authority, 728 F.Supp.2d 803 (S.D.W.Va 2010)(finding that the West Virginia Regional Jail Authority and Correctional Facility is not a "person" for purposes of a claim for money damages under § 1983). According, the plaintiff's attempt to raise a class action against the TVRJ pursuant to 42 U.S.C. § 1983 must be dismissed.[5]

**D. Lisa Wamsley**

---

[4]Those factors were: whether its powers are substantially created by the legislature; whether its governing board's composition is prescribed by the legislature; whether it operates on a statewide basis; whether it is financially dependent on public funds; and whether it is required to deposit funds in the state treasury.

[5]By recommending that the plaintiff cannot file a class action under § 1983, the undersigned is not implying that he may pursue a class action under some other theory. The undersigned has made no attempt to apply the requirements of Rule 23 of the Federal Rules of Civil Procedure to plaintiff's "class action" count of the complaint.

In order to commence an action in federal court, the plaintiff must file a complaint with the court and serve a summons and a copy of the complaint on all the defendants. Rule 4 of the Federal Rules of Civil Procedure set for the requirements for service.  When serving an individual within a judicial district of the United States, the Rule requires that process be served by:

 (1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service if made; or

 (2) doing any of the following:

  (A) delivering a copy of the summons and of the complaint to the individual personally'

  (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of a suitable age and discretion who resides there; or

  (c) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

Fed. R. Civ Pro. 4(e).

 West Virginia further allows process to be served by:

  (D) The Clerk sending a copy of the summons and complaint to the individual to be served by certified mail, return receipt requested, and delivery restricted to the addressee; or

  (E) The clerk sending a copy of the summons and complaint by first class mail, postage prepaid, to the person to be served, together with two copies of a notice and acknowledgment conforming substantially to Form 14 and a return envelope, postage prepaid, addressed to the clerk.

W.Va. R. Civ. P. 4(d)(1).

In this case, there is no dispute that the plaintiff sent Ms. Wamsley's complaint and summons by certified mail to her attention at the TVRJ. It was signed for by an individual, whose name appears to be Marvin Bolton. (Doc. 31, p.1). Therefore, it is clear that the plaintiff did not deliver the summons to Ms. Wamsley individually and did not leave a copy at her home or usual place of abode. Moreover, the plaintiff did not have the clerk of court send a copy of the summons and complaint to Ms. Wamsley by certified mail, return receipt requested with delivery restricted to her or by first class mail with two copies of notice and acknowledgment conforming to Form 14.

Ms. Wamsley is employed as a case worker by Appalachian Community Healthcare. (Doc. 16-1). The TVRJ entered into a contract with Primecare Medical, Inc.["Primecare"] , which required Primecare to provide psychological treatment for inmates at the TVRJ. (Doc. 16-2). Under its agreement with the TVRJ, Primecare entered into a contract with Appalachian Community Healthcare to provide certain services. (Id.). The plaintiff contends that in her capacity as a third party contractor, Ms. Wamsley implicitly authorized employees of the TVRJ to accept service on her behalf. (Doc. 27). However, beyond his apparent reliance on the definitions provided in W.Va. Code § 55-7B-1, he cites no authority is support of his assertion that Ms. Wamsley authorized any employee of the TVRJ to accept service on her behalf. Because the plaintiff service of process is insufficient under Rule 4, Ms. Wamsley is due to be dismissed as a defendant.

Moreover, even if the plaintiff has served her properly, the complaint as it relates to Ms. Wamsley would still be due to be dismissed. With respect to Ms. Wamsley, the plaintiff alleges that she committed medical malpractice. To the extent that the plaintiff is seeking to establish a medical negligence claim, he must comply with West Virginia law and establish that:

> (a) the health care provider failed to exercise that degree of care, skill, and learning required or expected of a reasonable, prudent health care provider in the profession or class to which the health care provider belongs acting in the same or similar circumstances; and (b) such failure was a proximate cause of the injury or death.

W.Va. Code § 55-7B-3.

When a medical negligence claim involves an assessment of whether or not the plaintiff was properly diagnosed and treated and/or whether the health care provider was the proximate cause of the plaintiff's injuries, expert testimony is required. <u>Banfi v. American Hospital for Rehabilitation</u>, 529 S.E.2d 600, 605-606 (2000). Additionally, under West Virginia law, certain requirements must be met before a health care provider may be sued. W.Va. Code §55-7B-6. This section provides in pertinent part:

> **§ 55-7B-6. Prerequisites for filing an action against a health care provider; procedures; sanctions**
> (a) Notwithstanding any other provision of this code, no person may file a medical professional liability action against any health care provider without complying with the provisions of this section.
> (b) At least thirty days prior to the filing of a medical professional liability action against a health care provider, the claimant shall serve by certified mail, return receipt requested, a notice of claim on each health care provider the claimant will join in litigation. The notice of claim shall include a statement of the theory or theories of liability upon which a cause of action may be based, and a list of all health care providers and health care facilities to whom notices of claim are being sent, together with a screening certificate of merit. The screening certificate of merit shall be executed under oath by a health care provider qualified as an expert under the West Virginia rules of evidence and shall state with particularity: (1) The expert's familiarity with the applicable standard of care in issue; (2) the expert's qualifications; (3) the expert's opinion as to how the applicable standard of care was breached; and (4) the expert's opinion as to how the breach of the applicable standard of care resulted in injury or death. A separate screening certificate of merit must be provided for each health care provider against whom a claim is asserted. The person signing the screening certificate of merit shall have no financial interest in the underlying claim, but may participate as an expert witness in any judicial proceeding. Nothing in this subsection may be construed to limit the application of rule 15 of the rules of civil procedure.

This Court previously held that compliance with W.Va. Code §55-7B-6 is mandatory prior to

filing suit in federal court. See Stanley v. United States, 321 F.Supp.2d 805, 806-807 (N.D.W.Va. 2004).[6]

With regard to the appropriate standard of care, plaintiff has completely failed to sustain his burden of proof. The plaintiff does not assert, much less establish, the standard of care for the diagnosis or treatment of a psychotic episode. Under the circumstances of this case, plaintiff would be required to produce the medical opinion of a qualified health care provider in order to raise any genuine issue of material fact with respect to the defendant(s)' breach of the duty of care. Moreover, there is nothing in the complaint which reveals that the plaintiff has met the requirements of W.Va. Code §55-7B-6. Accordingly, even if this court has supplemental jurisdiction over the plaintiff's state law claims for medical malpractice, dismissal is appropriate.[7]

## E. American With Disabilities Act

In his complaint, the plaintiff makes reference to the Americans with Disabilities Act ["ADA"]. First under Count II, he alleges that he was a member of a protected class according to the ADA and was denied his most basic right under 42 U.S.C. § 1981. The undersigned has already noted that § 1981 applies only to racial discrimination. In Count 5 of the complaint, the plaintiff alleges that he was a member of a protected class according to the ADA, and was subject to neglect,

___

[6] In Stanley, the plaintiff brought suit against the United States alleging that the United States, acting through its employee healthcare providers, was negligent and deviated from the "standards of medical care" causing him injury.

[7] The undersigned recognizes that in his response, the plaintiff asserts that Ms. Wamsley is not a healthcare provider and is not entitled to "the protection" of W.Va. Code § 55-7B-6. However, the MPLA defines "health care provider" as ...."a person, partnership, corporation, professional limited liability company, health care facility or institution licensed by, or certified in this state or another state, to provide health care or professional health care services....or an officer, employee or agent thereof acting in the course and scope of such officer's, employee's or agent's employment." W.Va. Code § 55-7B-2(g).

abuse, intimidation and humiliation by agents of the TVRJ because of his disability. The plaintiff further indicates that the failure to provide medical care resulted in act of assault and battery during cell extractions and his placement in a restraint chair on twelve different occasions. He therefore seeks compensatory and punitive damages according to the Medical Malpractice Laws of the State of West Virginia and the laws of the United States.

On June 15, 1988, the United States Supreme Court ruled unanimously that Title II of the ADA covers inmates in state prisons and local jails. See Pennsylvania Department of Corrections v. Yeskey, 524 U.S. 206 (1988). In addition, the Court has held that "insofar as Title II creates a private cause of action for damages against the States for conduct that *actually* violates the Fourteenth Amendment, Title II validly abrogates a states Sovereign immunity." United States v. Georgia, 546 U.S. 151, 156 (2006).

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Federal regulations implementing Title II require public entities to "make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity. 28 C.F.R. § 25.130(b)(7).

A plaintiff seeking relief under Title II "must establish: (1) that he is a qualified individual with a disability; (2) that he was excluded from participating in, or denied the benefits of a public entity's services, programs, or activities or was otherwise discriminated against; and (3) that such exclusion, denial of benefits, or discrimination was by reason of his disability." Parker v.Universidad

de Puerto Rico, 225 F.3d 1, 5 (1st Cir. 2000). A qualified individual with a disability means "an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal or architectural, communication, or transportation barriers, or the provision of auxiliary aids and services meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(2).

Courts routinely dismiss ADA suits by disabled inmates that allege inadequate medical treatment, but do not allege that the inmate was treated differently because of his or her disability. Doe v. Pfrommer, 148 F.3d 73, 82 (2d Cir. 1998). (dismissing a claim where it was "clear that the plaintiff [wa]s in essence challenging the adequacy of his [Vocational Educational Services for Individuals with Disabilities] services, not illegal disability discrimination"); Nails v. Laplante, 596 F.Supp 2d 475, r481-82 (D.Conn 2009)(dismissing inmate's ADA claim, which focused on inadequate medical care, because the complaint "d[id] not include any non-conclusory allegations of discriminatory animus or ill will based on his disability and identifie[d] no program he could not participate in or any service that was denied as a result of his disability"); Carrion v. Wilkerson, 309 F.Supp2d 1007, 1016 (N.D.Ohio 2004)("Plaintiff failed to allege that the defendants denied him the benefits of any services, programs, or activities provided for other non-disabled inmates, or that [the defendants] subjected him to discrimination because of his diabetes. Instead, he claims he was denied a diabetic diet...[but this] is not the type of claim that the ADA...[was] intended to cover." (Internal quotation marks and brackets omitted)); Atkins v. County of Orange, 251 F. Supp. 2d 1225, 1232 (dismissing mentally disabled inmates' ADA claim, which alleged that they were placed in isolation, because they did not 'allege that violent and self destructive inmates who are disabled due to mental illness are treated any differently than violent, self destructive inmates who are not

disabled due to mental illness); <u>Id</u>. (dismissing disabled plaintiff's ADA claim that alleged that he received an "inappropriate medical regime [that] caused him to sleep all the time, miss recreation and meal opportunities and otherwise deprive[d] him of any significant activity of any kind while he was at the jail," because the claimed loss "is challenging the adequacy of the mental health services provided at the jail, not illegal disability discrimination" internal quotation marks omitted)); <u>Gavin v. Cook</u>, No. 00-CV-29, 2000 WL 1520231, at *6-7 (D. Or. Oct. 3, 2000) (dismissing ADA claim of a diabetic inmate who alleged improper treatment of his diabetes, but "failed to allege that the State defendants denied him the benefits of any services, programs, or activities provided for other non-disabled inmates, or that they subjected him to discrimination because of his diabetes," because the ADA "afford[s] disabled persons legal rights regarding access to programs and activities enjoyed by all, but do[es] not provide them with a general federal cause of action for challenging the medical treatment of their underlying disabilities"); <u>Moore v. Prison Health Servs., Inc.</u>, 24 F. Supp.2d 1164, 1168 (D.Kan. 1998)("[T]he plaintiff...stated no more than a claim which challenges the medical care provided for his medical condition. He has not stated a claim for relief under the ADA because he does not complain he has been denied the benefits of the services, programs, or activities...due to discrimination based upon his disability." (Internal quotation marks omitted)) <u>aff'd</u>, 201 F.3d 448 (10th Cir. 1999).

By contrast, a court might not dismiss a suit by disabled prisoner if it alleges that he or she has been denied services that might have been provided to other prisoners. <u>See</u>, <u>e.g.</u>, <u>McNally v. Prison Health Servs</u>., 46 F.Supp. 2d 49, 58-69 (D. Me. 1999)( concluding that an HIV patience claim of discriminatory denial of prescription services provided to general prison population with state an ADA claim); <u>Clarkson v. Coughlin</u>, 898 F.Supp. 1019, 1037-38 (S.D.N.Y. 1995)( granting relief

under ADA where hearing-and cared inmates allege their rights were violated by the prison's practice of conducting disciplinary, grievance, and parole hearings without providing interpretive services or assisted devices).

Here, the plaintiff has failed to satisfy the second and third element of a Title II ADA claim. Assuming arguendo, the he suffers from a mental illness that is a "disability" within the meaning of the ADA, the plaintiff has not sufficiently alleged that he was excluded from participation in a program or activity, nor does he allege that he was treated any differently from other detainees who are not mentally ill. Moreover, he asserts no facts to support a legal conclusion that he was discriminated against based on his disability. In essence, he is making a claim of deliberate indifference to his medical needs, or a claim of malpractice, neither of which states a claim under the ADA.[8]

## G. Plaintiff's Motion for Sanctions

As previously noted, on November 26, 2012, the Plaintiff filed a Motion for Sanctions and Judicial Notice. It appears that the plaintiff seeks sanctions against Ms. Wamsley based on his assertion that she "lied" in her affidavit. In particular, the plaintiff asks the Court to take judicial notice that an agent of the TVRJ signed for and accepted certified mail on her behalf. Therefore, the plaintiff alleges that Ms. Wamsley lied in her affidavit when she stated that "she had not received a copy of Jonathan Andrew Gordon's Complaint by certified mail." In addition it appears that the plaintiff alleges that Ms. Wamsley was engaged in the unauthorized practice of medicine, and is not entitled to the protection of W.Va. Code § 55-7B-6.

---

[8]Furthermore, the extent that the plaintiff may state a claim of deliberate indifference which is viable under 42 U.S.C. § 1983, the TVRJ, as discussed elsewhere, is not a proper defendant, and the plaintiff has not obtained proper service on Lisa Wamsley.

The Federal Rules of Evidence provide that a "court may judicially notice a fact that is not subject to reasonable dispute..." Red. R. Evid. 201(b). Moreover, the Fourth Circuit has declared "[o]nly indisputable facts are susceptible to judicial notice." <u>Nolte v. Capital One Fin. Corp.</u>, 390 F.3d 311, 318 n. (th Cir. 2004)(citations omitted); <u>see</u> <u>United States v. Jones</u>, 29 F.3d 1549, 1553 (11th Cir. 1994)("the fact must be one that only an unreasonable person would insist on disputing").

With respect to Ms. Wamsley, it is clear that she never claimed to be a licenced psychologist. Moreover, there is nothing to indicate that she engaged in the "unauthorized practice of medicine. Additionally, she is a healthcare provider under the definition of the MPLA as set out in footnote 7, <u>supra</u>. Furthermore, the plaintiff's assertions regarding service are subject to reasonable dispute, and therefore, cannot be noticed judicially. Accordingly, not only is there no basis for taking judicial notice of any fact, there is no basis for sanctions.[9]

With respect to Thomas Buck and Bruce M. Clark, the plaintiff appears to seek sanctions against them because the TVRJ, through counsel, "admits that Plaintiff was suffering from a psychotic episode, and that the restraint chair was the medical treatment offered by Tygart Valley Jail." (Doc. 13, p. 7). The plaintiff maintains that to "suggest that placing the Plaintiff in a restraint chair twelve times over a four day span is proper medical treatment for a psychotic episode is such an egregious statement contrary to the concept of human decency sanctions are warranted." (Doc. 13, p. 8). First, the undersigned can find no indication that any admission was made that the restraint chair was the medical treatment offered by the TVRJ. Furthermore, it is preposterous for the plaintiff to allege that counsel suggests that the proper medical treatment for a psychotic episode is placing someone in a restraint chair. It is clear that no violation of Rule 11(b) has occurred.

---

[9]The undersigned notes that the plaintiff does not indicate what sanctions he seeks.

# V.  Recommendation

For the foregoing reasons, the undersigned recommends that : (1) the Motion to Dismiss filed by the TVRJ (Doc.11) be **GRANTED** and the complaint it relates to it be **DISMISSED WITH PREJUDICE** for failure to state a claim upon which relief can be granted; (2) the Motion to Dismiss filed by Lisa Wamsley (Doc. 16) be **GRANTED**, and the complaint as it related to her be **DISMISSED WITHOUT PREJUDICE** for failure to obtain service: (3) the plaintiff's Motions for Default Judgment (Docs. 22 and 27)[10]; and (4) the plaintiff's Motion for Sanctions and Judicial Notice (Doc. 31) be **DENIED**; and (5) this case be **CLOSED AND STRICKEN FROM THE ACTIVE DOCKET**.

Within fourteen (14) days after being served with a copy of this report and recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections.  A copy of any objections shall also be submitted to the Honorable Gina M. Groh, United States District Judge. Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation.  28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985);  United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk is directed to send a copy of this Report and Recommendation to the *pro se*

---

[10]To the extent the plaintiff seeks a default judgment against Ms. Wamsley, it clear that she has not been properly served, and therefore, no default can be entered.  With respect to the TVRJ, the plaintiff's proof of service indicates service of the summons was made on July 16, 2012. The plaintiff did not file the Proof of Service until August 29, 2012.  Assuming service was made on July 16, 2012, the jail's answer was due on August 6, 2012. Therefore, to the extent a default occurred, it was corrected within one day when the TVRJ filed its Motion to Dismiss on August 7, 2012, and the plaintiff has made no showing that he was prejudiced in any way.

plaintiff by certified mail, return receipt requested, to the plaintiff's last known address as shown on the docket, and to counsel of record via electronic means.

DATED:  2-4-2013

DAVID J. JOEL
UNITED STATES MAGISTRATE JUDGE